22-3128 U.S. v. Doe. Mr. Bell. Thank you, Your Honor. May it please the Court. Imagine a baseball game. The batter hits a weak ball between the third baseman and the second baseman, takes a hop, shortstop fields it, catches it, throws it to the second baseman, second baseman turns, fires, throws it to the first baseman to record the out. Now, we can say that the throw from the short top facilitated the catch by the second baseman and that the throw from the second baseman facilitated the catch by the first baseman, but we couldn't say the opposite of those things. The first baseman's catch didn't make the second baseman's throw any easier and the second baseman's catch didn't make the shortstop's throw any easier. And that point of that is that some things have to end before something else can occur. And in this case, under Kansas law, the burglary had to end before, or at the time, Mr. Ratzlaff's possessed the firearm. Your focus throughout has been on the term facilitate. Yes, Your Honor. The language in the guideline is in connection with. Yes, Your Honor. So can't the Sentencing Commission, in its commentary, say what in connection with means? And it may not match exactly with whether there's a facilitation. Because if the issue is just whether the firearm was connected with the crime, here it was seized in the crime and perhaps facilitated the escape, or could have facilitated the escape. Why do we care about the word facilitate so much? Well, this court, even before the Sentencing Commission issued its amendments that interpreted the term in connection with to mean facilitate, this court had interpreted it to mean the same thing before the Sentencing Commission had ever interpreted it. This court has held that essentially in connection with is an almost indeterminate or meaningless term without some form of limitation, because it means almost anything to anyone. And so this court has found the Supreme Court's extrapolation of 924C by the Supreme Court as instructive and said that we have decided we are going to to facilitate. Well, sometimes we say things because we're thinking of the facts of that case, and maybe the facts of the cases that have come before. Have we ever addressed this situation and said, no, it doesn't facilitate? When there is a pretty clear connection, as we have here, have we insisted that facilitation is the only type of connection that justifies the enhancement? I believe so, Your Honor. This court has consistently interpreted both before the Supreme Court defined it that way. Well, we've said we've used that term. We've used that term. But you can't think of everything when you write this. Let me ask this. Does the comment by the Sentencing Commission that specifically covers this situation, was that comment, did that comment predate our decisions? No, that comment came after your decisions about interpreting in connection with to mean to facilitate. Doesn't the commentary that, don't we defer to the commentary as long as it's not inconsistent with the guideline? Well, I think that that brings us to the secondary part of the argument about how Tizer affects how much deference or when the court should defer to guideline commentary. Well, it's whether it's a reasonable interpretation of the guideline. And since the guideline language is in connection with, not facilitates, why under any standard of interpretation of the guidelines, why we wouldn't find deference to the Sentencing Commission appropriate in this circumstance? Well, I don't think there's anything wrong with the court deferring to the connection with to equal facilitate. Both parties agree that that's appropriate. But under the Tizer analysis, deferring to this automatic rule that any time that there's a burglary that occurs and the person finds a firearm during the course of that burglary, then the court has to apply that enhancement. That's where I believe that we run into trouble with Tizer, because that's, as I think the court has put its finger on, you can't anticipate every type of circumstance, but yet this comment makes a rule that takes any sort of fact-finding or discretion for different circumstances away from a district court judge. Well, in deciding whether to apply that comment here, can't we consider, or should we consider the specific facts in our case? Maybe there are cases where finding the firearm was, I'm not quite sure what the circumstance would be, but we would have a hard time saying it was in connection with the burglary. But here there's no question. But here there's a much easier question of whether taking possession of the firearm was in connection with the burglary. I think if the court wanted to depart from its precedent saying interpreting in connection with means facilitate, then I agree. Then the court could say, listen, if we just look at connection with, and we're not even going to look at how we interpret in connection with what that means, and we're not going to have the limiting principle that we've had on it before that it means to facilitate, then I think that's accurate, right? And maybe we shouldn't do what you're describing we would do in the absence of a change to the comments to the application notes. But here we do have a change to the application notes, so why shouldn't we follow that? I'm sorry, I'm not sure I understand your question, Your Honor. Maybe I'm asking these questions based on a total mistake on my part, but I thought the application notes now say that the situation we have here does satisfy the guideline. Right, the application note 14b says, so there's 14a that also interprets in connection with to mean facilitates. And then there's 14b that says in any burglary offense, if a person finds a gun during that burglary, even if they don't do anything else with the gun, then that automatically facilitates the burglary offense and district court you have to impose. I thought that was it, but I thought maybe I just imagined it. Um, well, in that circumstance, perhaps that would change whether what we would be doing is appropriate. Absent that comment, absent that application note, maybe we would be bound by our precedent interpreting in connection with and limited only to facilitation. That would be facilitation under the state law. It might differ from one state to another, but given the example given in the application notes, that postdates our decisions, you say, then what's wrong with our adjusting our interpretation to fit what the sentencing commission has said in its application notes? If the court wanted to independently make a rule that said at any point, regardless of what the commentary says, we as a court decide as a rule that this application applies in any burglary when a firearm is taken, even if nothing else is happening, or nothing is done with that gun. Basically, a rule that mimics what's in the commentary to the guideline. I don't like to speak. I think that district courts might be, I think if I were a district court judge, I would feel that that was taking some of my role as a district court judge away from me because you'd be painting with a rather large brush and anticipating the facts of every type of burglary that could potentially happen, which is difficult to do. But doing that would be consistent with our precedent saying we follow the commentary unless it's an incorrect and unacceptable interpretation of the guideline language. The guideline language is in connection with. That's the language. It doesn't have the word facilitate. Why wouldn't we be keeping with our precedent about how we deal with the commentary by following the commentary in this case? Despite our precedent that predated the commentary. I believe that Kaiser changes how much and when this court should defer to the commentary. What's the limit? When should we not defer to the commentary? When it's an unreasonable interpretation of an ambiguous term that doesn't implicate the comparative experience of the agency interpreting its own rule. So here we have this term in connection with and we have this interpretation that means facilitate. That's fine. You have this sort of indeterminate term. The agency is going to define it with a term of limitation firmly within sort of appropriate wheelhouse for an agency. But then you go a step further and say, oh, and by the way, courts, regardless of the facts, anytime this happens, you have to apply this enhancement. Even if you don't think what we just said is true, even if it couldn't have facilitated it, you still have to apply this enhancement. That rule is an unreasonable interpretation of in connection with because it doesn't really interpret it. It makes a rule. It makes a policy choice. And it's not really one that judges are ill-equipped to make. It's not one that the Sentencing Commission has comparative expertise with versus judges. Deciding whether one thing makes another thing easier helps or abets another offense is sort of the meat and potatoes of district court judges. There's no reason that the Sentencing Commission gets to make an absolute decision on that term. Well, I'm not sure this is what happened, but if under most state laws, perhaps not Kansas, it would satisfy the facilitate requirement because the burglary isn't completed until you escape freely. Then why couldn't the commission say, well, this shouldn't depend on state law? We're going to apply this across the board to all federal defendants. Would that not be a reasonable approach for the Sentencing Commission to take? It would be reasonable if they made it in a guideline and didn't put it in a commentary. It's a comment. The guidelines are the ones that are subject to congressional approval and have the actual effect of force. The commentary is just the Sentencing Commission's interpretation of its own rules. The Sixth Circuit- Counsel, could I just interject here? Does your argument rise or fall on the question of whether Kaiser is the proper precedent here or whether Stinson is still what we should be following? It does not. The only way we get to those questions is if this court determines that the district court's conclusion that possessing a firearm facilitated the burglary that came before it was incorrect. Only because the district court affirmatively disclaimed any reliance on the commentary when it decided to impose the four-level enhancement. So that's only been identified as an alternative basis for this court to affirm. Well, we've applied, or at least we've cited the Stinson since Kaiser in the sentencing context in United States v. McComb. And then we have the Morris case. And it seems like if it's Stinson and Morris that are the applicable precedent, how do you succeed on this appeal? Right. If we move from the first basis I just identified and go into the commentary, Kaiser v. Stinson, then yes, the argument- CM, I've run out of time.  I think this court would just have to find that Kaiser modifies Stinson by expanding or clarify the Auerrock holding in a way that is inconsistent with this court's interpretation of Stinson in the Morris decision. I just have one scenario that I wanted to ask you to address. And this is on the facilitation question. In this instance, what if during the course of the burglary, a security guard had accosted Doe? Couldn't Doe have used one of the guns to threaten the guard to complete the offense? And doesn't that show that facilitation would even be met here? As a clarifier, when you say during the course of the burglary- While Doe was in the facility and they were removing the guns. Security guard comes up and says, what are you doing here? Couldn't the gun be used to get away? The gun at that point could be used to embolden them to an escape, but it wouldn't facilitate the burglary because the burglary is complete at that point, before the security guard shows up. If Doe has possession of the guns, which he has to have in order to threaten the security guard, then at that point, the burglary is complete. So does this also turn on whether we have an entering in burglary versus a remaining in burglary? No, under either burglary scenario, that burglary was complete at the moment Mr. Ratzlaff took possession of the guns. Because burglary is basically a special form of attempt that doesn't merge with the completed crime. And if the attempt here is to steal a firearm, which is what he did, that burglary is over at the time he completes the underlying offense. So then we have a theft. Right, then you have the theft, which means he doesn't have an intent to commit a theft anymore. He's committed the theft. Did you have anything more? Thank you, counsel. Thank you. I guess. Good morning, Your Honors. Assistant United States Attorney Brian Clark for the United States. May it please the court. While the defendant was burglarizing the gun garage, he possessed the 11 firearms that he stole from the gun shop. And he possessed those firearms in connection with the burglary because those firearms, at the very least, had the potential to facilitate the burglary. That is the common sense conclusion that the district court came to when it imposed the four-level enhancement in this case. That conclusion is consistent with the plain text of the guideline, with this court's long-standing interpretation of the guideline, and also consistent with the commentary to the guideline. Is it consistent with Kansas law on burglary? There is that case, State v. Dawes, where the Kansas Supreme Court said that burglary is complete once an unauthorized entry occurs. So under Kansas law, and in fact, in the Dawes case, and also the Frierson case, which we discuss in the response brief, the Kansas Supreme Court has made clear that under Kansas law, there is entering into burglary, and then there is remaining within burglary. What you just described is entering into burglary. But what we're relying on here in this case is remaining within burglary. And the Kansas Supreme Court made clear, again, in Frierson and in Dawes, that the burglary continues even after the unlawful entry. The burglary continues while the defendant remains unlawfully within the building as long as he has the intent to commit a felony therein. And here, that's what we have. We have, we have... Could I just ask on that point? I understand the point you're making, but did the district court determine that Doe committed a remaining within burglary? And did the government argue that it was a remaining within district court? So I'll take that in reverse order. So below, the government relied primarily, if not exclusively, on Stinson. However, it did argue in response to the defendant's first objection to the PSR. What do you mean by relied on Stinson? In the commentary, commentary 14b-1. The example of? Which provides that whenever a defendant finds and takes a firearm during the course of a burglary, the four-level enhancement applies. However, the government did spell out for the district court, and this is on page 57 of volume two of the record on appeal, that Kansas burglary includes both entering into as well as remaining in burglary. And the PSR also stated, and this is on page 58 of volume two of the record on appeal, that it was, quote, without a doubt that the defendant was in the process of committing a burglary when he found and took the firearms. So then getting to the first part of your question with respect to what the district court did or said. Uh, we know that the district court found that the defendant possessed the firearms as, quote, part and parcel of the burglary. That's on, uh, page 20 of volume four of the record on appeal. And that finding, by definition, demonstrates that the district court understood that the burglary was ongoing while the defendant was in the gun store and while he was taking possession of the firearms. And I think this might be a good place to remind the court that this isn't a case where the defendant stole a single firearm and where the defendant can say, well, once that single firearm was stolen, then the burglary necessarily had to end. The defendant stole 11 firearms. So, uh, to take your hypothetical, Judge Matheson, which I think is a great one, uh, if the defendant is inside the gun store, he's reaching into the display case that he has smashed open and he's removing firearms from that display case, if the officer in your hypothetical scenario had come in after the defendant had pulled the third firearm out of the display case, absolutely the defendant could have used that firearm in a way that would have, uh, for protection or intimidation so that he could then complete taking, uh, the remaining firearms. Uh, and at that point in time, there is still an ongoing burglary, right? He is in the process of burglarizing the gun garage. The burglary hasn't ended. The burglary is still ongoing because still the defendant is in there. He still has the intent to steal the firearms. He's possessing one while he's maintaining the intent to continue the burglary. And so that is our case here. And that is well supported by, uh, Kansas Supreme Court case law interpreting remaining within burglary, that it's not a momentary thing. It's not something that sort of abruptly ends. And again, I would point you to the Frierson and Dawes cases, which I think makes that perfectly clear. I'd like to also come back to this word facilitates. There was a lot of discussion in the top side of the argument that this court has, uh, interpreted the phrase in connection with to mean facilitate. And that's not quite right, actually. So we see in cases, uh, like Constantine and Vasquez and Walters, where this court says that in connection with is an extremely broad phrase and that it means either to facilitate or to have the potential of facilitating another felony offense. And it's that second part, the potential to facilitate the other felony offense that I think, uh, is important here because it shows just how loose the nexus can be between the possession and the other felony offense. So for example, in both Constantine and Vasquez, this court did not require the government to show that the defendant in those cases used the firearm in a particular way during the burglaries in those cases or possessed it in any unique way such that the firearm actually facilitated the burglary. It was sufficient to the court that the firearm had the potential of facilitating the burglary. And what this court said in Vasquez was, as long as the firearm could have facilitated the burglary if the situation had presented itself, sort of like your hypothetical, Judge Matheson, then that's sufficient. And I think that really broad understanding of in connection with really feeds into the commission's understanding and interpretation of how the guideline ought to apply in a situation. Counsel, could I just ask you on the phrase in connection with, as it's used in the guideline, is the government's position that that phrase is ambiguous or not ambiguous? I would say that in the words of Kaiser, after applying all of the tools of statutory interpretation, that on the facts of this case, it is not ambiguous. That it clearly provides for the four-level enhancement. Now, I grant the court that this court has... So is there any reason to give deference to note 14b if it's not ambiguous? I think there's no need to even reach that in this case. I think in this case, the easiest way for this court to decide the case is to say for years and years, even before application note 14b1 came along, this court interpreted the plain text of the guideline broadly enough that it clearly provides that the four-level enhancement applies in this case. And it could decide the case on the plain language alone. But if it gets past the plain language, and I will grant the court, this court has said that in connection with is extremely broad, but then it has applied the tools of statutory interpretation to say exactly what it means. And this court in Morris made clear that application note 14 is consistent with this court's prior interpretation of the plain text of the guideline. And it cited Constantine for that proposition. And I think it is important, Judge Hartz, I believe you asked about whether it's important to consider the particular facts of this case. And I think that's absolutely right. I mean, even if one could imagine a scenario where it might be difficult to apply the application note or the plain text of the guideline, this case with these facts is not it. I would also like to address something that my friend Mr. Bell said. He said that the application note would require the district court to apply a four-level enhancement, even if the possession could not have facilitated the burglary. But I think that gets it exactly wrong because what the Sentencing Commission was doing in that application note was resolving a circuit split over how the facilitation or potential to facilitate sort of interpretation of in connection with applied when a defendant found and took a firearm in the context of a burglary. There's a split at the time between the Fifth and Eighth Circuits on one side and the Fourth Circuit on another. And the question was sort of what is the nexus that is required? The Sentencing Commission took a look at that, which is squarely within the commission's bailiwick to do. And it determined and it sided with the Fifth and Eighth Circuits to say whenever a defendant finds and takes a firearm during the course of a burglary, that by definition is going to satisfy our understanding of in connection with, our understanding of having the potential to facilitate. And that interpretation simply recognizes the fact that a firearm is inherently dangerous. It inherently poses dangers to the public. It allows the defendant and provides a means of protection or intimidation during the course of a crime, just as your hypothetical Judge Matheson pointed out. And so I don't think that the application note directs district courts to apply the four level enhancement, even when a firearm could not have facilitated the other crime. I think the fact of possessing a firearm, the Sentencing Commission found was sufficient to satisfy the nexus requirement under the guideline 2K2.1B6B. And last, I guess, I would address your question, Judge Matheson, about Morris. And even as we argue at page 33 of our response brief, Morris remains good law in this circuit, even after Kaiser. And that's because Kaiser expressly protected pre-Kaiser precedent that was based on our seminal rock in the case of Morris. And other precedents like Stinson. And so if you get past the plain language of the guideline, then you run straight into Morris, and Morris would control here. Unless there are further questions, I would be happy to give back the rest of my time. Thank you, counsel. Thank you. Did Appellant have any more time? I'm happy to answer questions if the court has. You're free. Thank you, counsel. Case is submitted. Counsel are excused.